IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-162-FL

| | | |
|---|---|---|
| REINALDO OLAVARRIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DORETHA JONES, in her individual and private capacity; YETVETTE GRIFFIN, in her individual and private capacity; NICOLE FIELDS, in her individual and private capacity; DOREEN PEARSON, in her individual and private capacity; MANDY COHEN, NCDHHS Secretary, | ) ) ) ) ) ) ) ) | ORDER |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motions to dismiss (DE 35, 38), and on plaintiff's motion to show cause (DE 46) and motion to recuse (DE 47). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the reasons that follow, defendants' motions are granted, and plaintiff's motions are denied.

## STATEMENT OF THE CASE

Plaintiff commenced this action on April 24, 2020, by moving for leave to proceed in forma pauperis. On January 2, 2020, Magistrate Judge James E. Gates allowed plaintiff to proceed in forma pauperis and, on frivolity review, recommended that portions of plaintiff's claims be

---

[1] The court constructively has amended the caption of this order to reflect dismissal of prior defendants State of North Carolina, Roy Cooper, Regina Petteway, Tracy Champion, Tara Dawkins, Delores Taylor, Therman Newton, Christina Hendericks, James A. Smith, III, and Barbara Gibson.

allowed to proceed against a limited number of defendants but that plaintiff's other claims be dismissed. The court adopted that recommendation by February 5, 2020 order. Plaintiff claims, under 42 U.S.C. §1983, that a number of state and county officials, specifically Wake County Human Services ("WCHS") employees, violated his constitutional rights, including his right to due process and rights under the First and Fourth Amendment, and wrongfully denied him supplemental nutrition assistance program ("SNAP") benefits. Plaintiff seeks compensatory damages in excess of $20,000,000, costs of the litigation, and other declaratory or remedial relief as appropriate.

On March 5, 2020, plaintiff filed a notice of appeal of the court's order allowing plaintiff's claim to proceed in part. The United States Court of Appeals for the Fourth Circuit dismissed the appeal for lack of jurisdiction on June 22, 2020.

On June 3, 2020, defendants Nicole Fields ("Fields"), Yetvette Griffin ("Griffin"), Doretha Jones ("Jones"), and Doreen Pearson ("Pearson") (collectively "WCHS defendants") filed the instant motion to dismiss. Defendant Mandy Cohen ("Cohen"), the Secretary of the North Carolina Department of Health and Human Services ("NCDHHS"), filed the instant motion to dismiss on June 5, 2020. Plaintiff filed his response to defendants' motions, which also included a "motion to recuse" and a request for "judgment in favor of plaintiff . . . based on the defense response." ((DE 47) 1, 20). Plaintiff also filed a motion to show cause, seeking a hearing on alleged perjury by defendants' counsel and seeking to hold them in contempt.

## STATEMENT OF FACTS

The court incorporates by reference the background of this case set forth in its February 5, 2020 order and includes the following facts alleged in the complaint summarized as relevant to resolution of the instant matter. In March 2019, Fields, an employee of WCHS, denied plaintiff's

SNAP recertification. (Compl. (DE 5) at 7). Fields denied plaintiff's benefits because plaintiff refused to sign a consent for the release of information form, and because he failed to attend a recertification interview. (Id. at 7-9). Plaintiff alleges that he did not sign the consent for release of his information because the requirement to sign is a violation of his privacy and his Fourth and Fifth Amendment rights. (Id. at 8, 10). He also alleges that Fields failed to send notice of the recertification interview. (Id.). Pearson and Griffin, also employees of WCHS, assisted Fields by allegedly using coercion, blackmail, and threats when communicating with plaintiff. (Id. at 8-9).

Plaintiff previously had problems with WCHS prior to the March 2019 denial of SNAP benefits. (Id. at 9). WCHS allegedly denied his SNAP applications in error on multiple occasions over the past several years, and workers allegedly falsified records or failed to abide by SNAP policies and regulations. (Id. at 9, 11, 13-17). Plaintiff appealed the denial of his benefits on several occasions, in one instance resulting in a stipulation between plaintiff and WCHS that WCHS allegedly failed to abide by. (Id. at 9, 13). WCHS allegedly did not process his applications within the required 30 days, and WCHS employees asked for documents that they knew plaintiff did not have. (Id. at 10). WCHS workers allegedly expressed racist and prejudiced attitudes toward individuals like plaintiff who are disabled, Hispanic, and male. (Id. at 11). WCHS allegedly denied him benefits in retaliation for filing complaints. (Id.). During a hearing, Jones, an intake supervisor for WCHS, allegedly lied under oath on multiple occasions and defamed plaintiff. (Id. at 19).

Plaintiff communicated with Regina Petteway ("Petteway"), who is the head of WCHS and a former defendant, about the intentional acts of WCHS employees and Petteway did not respond to plaintiff's complaints. (Id. at 10). He filed a state level complaint with Therman Newton ("Newton"), a policy consultant for NCDHHS, who is also a former defendant, that also went

3

unaddressed. (Id.). The Governor, Wake County Board of Commissioners, and North Carolina Office of State Human Resources all allegedly had the capability to intervene and address the matter but failed to act. (See id. at 10, 15, 23). NCDHHS trained and supervised the WCHS defendants in conjunction with issuing the WCHS defendants their licenses to engage in social services in North Carolina. (Id. at 2).

Finally, plaintiff alleges that he applied for employment with the State of North Carolina but was denied because of a disability. (Id. at 26).

**COURT'S DISCUSSION**

A.   Motion to Recuse

   1.   Standard of Review

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. "Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality," In re Beard, 811 F.2d 818, 827 (4th Cir. 1987), as judged under an "objective standard [that] asks whether the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses all the facts and circumstances." United States v. DeTemple, 162 F.3d 279, 286 (4th Cir. 1998). The "Supreme Court has made crystal clear, however, that litigants may not make the trial judge into an issue simply because they dislike the court's approach or because they disagree with the ultimate outcome of their case." United States v. Gordon, 61 F.3d 263, 268 (4th Cir. 1995).

   2.   Analysis

Here, there is no basis in law or in fact for the court to recuse itself from this matter. As to plaintiff's argument that the court acted inappropriately by allowing portions of the case, such as

4

entry of an initial scheduling order, to continue while his appeal from a non-appealable order was pending, "[t]he general rule is that the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals." In re Grand Jury Proceedings Under Seal v. United States, 947 F.2d 1188, 1190 (4th Cir. 1991) (emphasis added); see also United States v. Hitchmon, 602 F.2d 689, 692–694 (5th Cir. 1979) (noting that the filing of notice of appeal from a non-appealable order does not divest district court of jurisdiction). Accordingly, there was no impropriety committed by the court during plaintiff's appeal's pendency.

To plaintiff's contention that the court made arguments on behalf of defendants, it is the court's statutory duty to "dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. 1915(e)(2)(B) (emphasis added). The court's responsibility is to announce the law and its application to the case or controversy before the court. Const. art III., sec. 2, cl. 1. The fact that the law and the alleged facts do not support portions of plaintiff's claim is not indicative of bias by the court. Nor is there a basis for plaintiff's claim that this court's adverse rulings constitute racial and gender discrimination.

Finally, the court construes plaintiff's request that "judgment in favor of plaintiff be entered based on the defense [sic] response" ((DE 47) 20), as a request for judgment on the pleadings under Rule 12(c). Such a motion is premature as pleadings have not closed since an answer has not been filed by any of the defendants against whom plaintiff moves.

Accordingly, plaintiff's motion for the undersigned to recuse herself is dismissed and plaintiff's motion for judgment on the pleadings is dismissed without prejudice.

B.  Motions to Dismiss

   1.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

   2.  Claims Against Defendant Cohen

As the court has already held, based on the facts alleged in the complaint, the only available relief plaintiff may seek from defendant Cohen under his § 1983 claim is declaratory relief, pursuant to Ex parte Young, 209 U.S. 123 (1908), due to North Carolina's sovereign immunity from retroactive relief in the form of damages. (See Order (DE 7) 6).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting

6

Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). However, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." See Graham, 473 U.S. at 165-66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978))).

"[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." Id. at 166 (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)). Accordingly, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's "policy or custom" must have played a part in the violation of federal law.'" Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Graham, 473 U.S. at 166). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Hunter v. Town of Mocksville, 897 F.3d 538, 554 (4th Cir. 2018) (quotation omitted).

> A policy or custom for which a [government entity] may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (second alteration in original) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)) (municipal liability context).

Here, plaintiff has not alleged sufficient facts to support a § 1983 claim for prospective injunctive relief against defendant Cohen in her official capacity. Plaintiff does not point any specific, express policy of NCDHHS, decision by NCDHHS, or persistent practice by NCDHHS

7

that allegedly resulted in a constitutional violation committed as part of the denial of his applications or recertifications for SNAP benefits.

The only portions of plaintiff's complaint that reference NCDHHS are those concerning training and supervision of WCHS employees, (Compl. (DE 5) 2), former defendant Newton's failure to act on plaintiff's complaint about WCHS, (id.), and an allegation that NCDHHS refused to abide by a decision rendered in a case against it, (id. at 13).

First, plaintiff alleges that each of the WCHS defendants "[i]s trained and supervised by" NCDHHS regarding "Civil Rights Training," "ADA compliance," and "Language Access" and that they hold their license and office "contingent on the licensure standards issued" by NCDHHS. (Id. at 2). This training and supervision are not further detailed elsewhere in plaintiff's complaint beyond conclusory assertions that state and local officials, writ large, failed to supervise and issue policies to stop due process violations. (See, e.g., id. at 14). Plaintiff suggests the court should infer from these factually sparse statements alone that the WCHS defendants' alleged violations of plaintiff's rights were caused by NCDHHS's failure to train and supervise them to such a degree as to manifest a deliberate indifference to the rights of citizens. Reading only the facts as alleged in the complaint, such an inference would be unreasonable as it would be based on mere speculation due to plaintiff's failure to provide more than bare-boned assertions of failure to train. See City of Canton v. Harris, 489 U.S. 378, 390 (1989) ("[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."); Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989). NCDHHS's purported training and supervision of WCHS employees, in and of itself, does not support that plaintiff has stated a claim upon which relief could be granted.

8

As to former defendant Newton's alleged failure to act on plaintiff's complaint about WCHS, this bare assertion is devoid of further factual enhancement and is therefore not credited by the court. Even assuming plaintiff's allegation was joined by additional supporting facts, plaintiff has not indicated how former defendant Newton's failure to address his complaint about WCHS employees gave rise to the alleged due process violations by those employees or how Newton's failure to investigate his complaint, the details of which are not included in the pleadings, rose to the requisite level of governmental misconduct to merit § 1983 liability.

Finally, the court notes that plaintiff's allegation that NCDHHS refused to abide by a decision rendered in a case against it, (see Compl. (DE 5) 13), may have been intended as a reference to WCHS given the numerous other allegations that WCHS failed to abide by stipulations made in a case appealed to the "state level." (See, e.g., id. at 9, 11). Regardless, no additional facts are given regarding this purported failure by NCDHHS, preventing any reasonable inference that this was a widespread policy or practice by NCDHHS that would give rise to a colorable § 1983 claim.

Plaintiff has not alleged sufficient factual matter for the court to find that his right to declaratory relief against defendant Cohen rises above a speculative level. See King v. Rubenstein, 825 F.3d 206, 225 (4th Cir. 2016) ("Even a pro se plaintiff, however, must allege sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 555)). Accordingly, his claim against her is dismissed without prejudice.

    3.    Claims Against Defendants Jones, Griffin, Fields, and Pearson

As already noted, "[t]o state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

9

deprivation was committed by a person acting under color of state law." West, 487 U.S. at 48. Unlike the official capacity claim against defendant Cohen discussed above, the instant "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165. Although personal capacity suits can result in money damages, the government official sued in his or her personal capacity may invoke the doctrine of qualified immunity. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006).

"Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test . . . : (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Id. (quoting Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003)). The court "may address these two questions in 'the order . . . that will best facilitate the fair and efficient disposition of each case.'" Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

      a.    Potential Federal Rights Violations

          i.    Due Process

The Fourteenth Amendment's Due Process Clause prohibits "any State" from "depriv[ing] any person of life, liberty, or property, without due process of the law." U.S. Const. amend XIV, § 1.[2] Accordingly, "[i]n order to make out either a substantive or procedural due process claim, a

---

[2] Although plaintiff cites the Fifth Amendment, assumedly relying on its Due Process Clause, the court's analysis references the Fourteenth Amendment and its Due Process Clause as the Fifth Amendment is applicable only to the federal government. See Pub. Utilities Comm'n of D.C. v. Pollak, 343 U.S. 451, 461 (1952). Regardless, "the standards employed by the Supreme Court in analyzing due process claims under the Fourteenth Amendment apply with equal force to claims raised under the Fifth Amendment." United States v. Al-Hamdi, 356 F.3d 564, 574 n.11 (4th Cir. 2004).

10

plaintiff must allege sufficient facts to support a finding that the [plaintiff] 'w[as] deprived of life, liberty, or property, by governmental action.'" Equity In Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011) (quoting Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997)).

"A protected property interest cannot be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source." Id. The United States Court of Appeals for the Fourth Circuit has recognized that Congress intended to create a statutory entitlement "and, by extension, [a] property interest" through the amended Food Stamp Act, but that, importantly, the property interest and statutory entitlement are "of a limited nature." Holman v. Block, 823 F.2d 56, 59 (4th Cir. 1987). In Holman, The Fourth Circuit quoted with approval the Sixth Circuit's decision on the issue, which concluded that "a household has no protectable property interest in the continuous entitlement to food stamps beyond the expiration of its certification period." Id. (internal quotation marks omitted) (quoting Banks v. Block, 700 F.2d 292 (6th Cir. 1983)). As explained by the Holman court, although the Sixth Circuit "recognized the recipient's right to reapply for new certification periods, it characterized the anticipated receipt of benefits beyond the certification period as 'an unprotected unilateral expectation.'" Id. (quoting Banks, 700 F.2d at 296).[3]

Construed liberally, plaintiff's pro se complaint alleges three discrete potential procedural[4] due process violations. Accepting plaintiff's limited pled facts as true, all three fail to state a due process violation cognizable for a § 1983 claim.

---

[3] The Holman court noted that the plaintiffs' "separate statutory right to seek recertification is unquestionably protected by due process." Holman, 823 F.2d at 59 n.4. The court addresses plaintiff's statutory right to seek recertification, which was not violated, below as part of the analysis of plaintiff's § 1983 claim in as far as it is premised on violation of federal statutory law. However, for those same reasons discussed below, namely, "that a full and fair opportunity to achieve recertification was accorded to" plaintiff and "[a]ny delay attendant to recertification was attributable to [plaintiff's] failure to cooperate with the responsible officials," the court concludes that plaintiff's due process protected statutory right to seek recertification was not violated either. See id.

[4] Even presuming that the substantive due process right to informational privacy, which the Supreme Court

11

First, plaintiff alleges that his due process rights were violated by the 2019 denial of his recertification on the basis that he "refused to sign a blank consent for the release of information form." (Compl. (DE 5) 8). But, as noted above, plaintiff's due process rights only extended to the period for which plaintiff and his household had already been certified for SNAP benefits, not to future SNAP benefits attainable through the recertification process. Ergo, any "interruption in [plaintiff's] benefits was not in violation of [his] due process rights because [he] had no protected interest in the continuous receipt of food stamps." Holman, 823 F.2d at 59. Under the Constitution, no process was due to plaintiff in regard to his application, via the recertification process, for future SNAP benefits. Therefore, the requirement to sign the information release form could not have violated his due process rights as it was a part of the process to receive statutory benefits in which plaintiff only had "an unprotected unilateral expectation."[5] Id. (quotation omitted).

Second, plaintiff alleges that defendant Fields failed to send notice of a recertification interview. (Compl. (DE 5) 8, 10). Although, "[a]t bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard," Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 146 (4th Cir. 2014), as already noted, plaintiff had no protected property interest in future SNAP benefits, the goal of the recertification process, and therefore no notice was needed.

---

assumed in NASA v. Nelson to exist, is implicated by the request to sign an information release form, plaintiff's claim would fail for similar reasons to the Nelson plaintiffs. 562 U.S. 134, 138 (2011) ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in Whalen and Nixon."). The SNAP regulatory scheme includes a "statutory or regulatory duty to avoid unwarranted disclosures," which "allays these privacy concerns," however. Id.; see also 7 U.S.C. § 2020(e)(8) (requiring "safeguards which prohibit the use or disclosure of information obtained from applicant households" barring certain statutory exceptions); 7 C.F.R. § 273.2(b)(4). Accordingly, even presuming plaintiff could bring a Nelson claim in this instance, it would fail due to the privacy protections already afforded to plaintiff by the relevant statutory scheme.

5   This is true in reference to any and all of plaintiff's procedural due process claims that stem from denials of prospective SNAP benefits as a part of the recurring recertification process.

Third, plaintiff alleges that, even before the 2019 denial, prior SNAP applications had been denied due to error, record falsification, the requirement of documents that WCHS knew plaintiff did not have, and failure to abide by SNAP's regulatory framework.

All of plaintiff's claims of procedural due process violations stemming from WCHS conduct prior to 2019 fail to state claims upon which relief can be granted. In as far as plaintiff alleges incompetence on the part of WCHS, (see e.g., Compl. (DE 5) 10 ("The scary part is I met with a Program Intake Manager whom did not know what she was doing.")), such mistakes do not rise to the level of due process violations. Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."). Further, plaintiff's allegation of record falsification is conclusory, undetailed, and devoid of further factual enhancement and is therefore uncredited by the court even at the pleading stage. Nemet Chevrolet, Ltd., 591 F.3d at 255. As to plaintiff's claim that the request for documents, which the WCHS defendants knew he did not have, violated his due process rights, such an argument has no legal merit.

Finally, plaintiff's allegations of failure to abide by SNAP regulations, even presuming they were cognizable due process violations, do not connect said failures to any specific WCHS defendant and, instead, reference purported institutional failures, which are not colorable in the instant suit after dismissal of plaintiff's official capacity claim against former defendant Petteway, the head of WCHS. The failure to tie the alleged regulatory violations to any specific defendant dooms those claims as well. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [defendant] and any denial of [plaintiff's] constitutional rights, the action against him must fail.").

In sum, plaintiff's § 1983 claims as far as they are based on a due process violation by any of the WCHS defendants fail to state claim under Rule 12(b)(6).

### ii. First Amendment

Construed liberally, plaintiff's allegations of "retaliation for 'saying something'" and that "retaliation for filing complaints in the past [is] at the heart . . . of the current denial of SNAP benefits" implicate a constitutional violation in the form of First Amendment retaliation.

> [A] § 1983 retaliation plaintiff must establish three elements in order to prove a First Amendment § 1983 retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action.

Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000) (citations omitted).

Here, plaintiff's complaint does not contain sufficient facts, relevant to his claim of First Amendment retaliation, to raise his right to relief above a speculative level. He does not specify the contents of his complaints or when he made them. Nor does the complaint contain facts that permit a reasonable inference that any generalized complaints to WCHS had the requisite causal connection to denial of plaintiff's SNAP recertification or applications. In sum, the complaint fails to state a claim for First Amendment retaliation.

### iii. Fourth Amendment

Plaintiff alleges that the WCHS defendants' request that he sign a blank consent for the release of information form was a violation of his Fourth Amendment rights

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate,

are per se unreasonable under the Fourth Amendment . . . ." Katz v. United States, 389 U.S. 347, 357 (1967). However, while "the Fourth Amendment [is] applicable to the activities of civil as well as criminal authorities," New Jersey v. T.L.O., 469 U.S. 325, 335 (1985), "[t]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979).

Here, while it is not clear in plaintiff's complaint, the court ascertains two actions by the WCHS defendants as a part of the recertification process that could feasibly implicate the Fourth Amendment: (1) the request for plaintiff to sign the consent to release of information form and (2) the actual garnering of information from third parties had plaintiff signed the form. However, neither give rise to cognizable Fourth Amendment violations even taking plaintiff's allegations as true.

First, the initial request by defendant Fields and subsequent requests by other WCHS defendants do not fall within the ambit of the Fourth Amendment's protections against searches as they do not invade a reasonable expectation of privacy given the SNAP statutory requirements for income verification. See Illinois v. Caballes, 543 U.S. 405, 408 (2005) ("Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." (quoting United States v. Jacobsen, 466 U.S. 109, 123 (1984))); cf. Florida v. Bostick, 501 U.S. 429, 434 (1991) (explaining that mere police questioning does not constitute a seizure). Even if the court were to say that the WCHS defendants' mere request that plaintiff sign the release form was a search, it certainly could not say that such a search was unreasonable. See Wyman v. James, 400 U.S. 309, 318 (1971) (explaining that a New York law making receipt of welfare benefits contingent on a social worker's visit to the home does "not fall within the Fourth

15

Amendment's proscription . . . because it does not descend to the level of unreasonableness . . . which is the Fourth Amendment's standard"). This is especially true given the protections for plaintiff's privacy, cf. Marshall v. Barlow's, Inc., 436 U.S. 307, 321 (1978) ("[T]he reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute."), enumerated in the statute and implementing regulations. See, e.g., 7 U.S.C. § 2020(e)(8) (requiring that state agencies implement "safeguards which prohibit the use or disclosure of information obtained from applicant households") 7 C.F.R. § 273.2(e)(1) ("The State agency must protect the applicant's right to privacy during the interview.").

Second, plaintiff does not have any Fourth Amendment interest in any information held by third parties that the WCHS defendants sought plaintiff's permission to request. United States v. Graham, 824 F.3d 421, 425 (4th Cir. 2016) ("[A]n individual enjoys no Fourth Amendment protection 'in information he voluntarily turns over to [a] third part[y].'" (second and third alterations in original) (quoting Smith v. Maryland, 442 U.S. 735, 743-44 (1979))), abrogated on other grounds by Carpenter v. United States, 138 S. Ct. 2206, 2223 (2018); United States v. Miller, 425 U.S. 435, 441 (1976) ("[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.").

In sum, plaintiff has failed to adequately allege a Fourth Amendment violation that could serve as the basis for a § 1983 claim.

### iv. Federal Statutes and Regulations

Section 1983 only protects against "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Accordingly, "[i]n order to seek redress

16

through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997). Therefore, "§ 1983 creates a cause of action to enforce a federal statute only when the underlying statute itself unambiguously 'confers an individual right' on the plaintiff." Planned Parenthood S. Atl. v. Baker, 941 F.3d 687, 695 (4th Cir. 2019) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). Finally, "[a]n administrative regulation . . . cannot create an enforceable § 1983 interest not already implicit in the enforcing statute." Smith v. Kirk, 821 F.2d 980, 984 (4th Cir. 1987).

Assuming without deciding that the SNAP statute and regulations concerning recertification confer an actionable individual right on plaintiff, plaintiff's § 1983 claim still fails due to its factual deficiencies. See Justice v. N. Carolina Dep't Health & Human Servs. Sec'y, 775 F. App'x 107, 108 (4th Cir. 2019) (per curiam) ("[T]here is at least a plausible argument that the SNAP statute and regulations unambiguously confer rights on SNAP benefits claimants in such a manner that a § 1983 cause of action is available to enforce those rights."). Plaintiff lists a number of SNAP statutes and regulations that he alleges have been violated, (see, e.g., Compl. (DE 5) 16-17), but does not provide further factual enhancement of these allegations beyond bare assertions and legal conclusions.

Nor does plaintiff allege facts tying the violations to specific WCHS defendants, leaving the court to speculate that the violations stem from the 2019 denial premised on plaintiff's failure to sign the consent form and attend the recertification interview. And, in as far as the complaint alleges violations of statutory and regulatory deadlines by WCHS defendants in 2019, such delays were self-inflicted due to plaintiff's refusal to cooperate with the WCHS defendants processing his recertification. See 7 U.S.C. § 2015 ("No household shall be eligible to participate in the supplemental nutrition assistance program if it refuses to cooperate in providing information to the

17

State agency that is necessary for making a determination of its eligibility or for completing any subsequent review of its eligibility."); see also 7 C.F.R. § 273.2(f)(4)(i) ("State agencies shall use documentary evidence as the primary source of verification for all items except residency and household size. These items may be verified either through readily available documentary evidence or through a collateral contact." (emphasis added)).

Just as the plaintiffs in Holman, although plaintiff has a "statutory right to seek recertification," which, as the court noted above, "is unquestionably protected by due process," here, "a full and fair opportunity to achieve recertification was accorded to" plaintiff and "[a]ny delay attended to recertification was attributable to [plaintiff's] failure to cooperate with the responsible officials," 823 F.2d at 59; namely, refusing to sign the consent form. Even taking plaintiff's allegation that he did not receive notice of the interview for recertification as true, as the court must, and even assuming that such a failure to notice violated the SNAP regulatory scheme, plaintiff does not provide sufficient factual basis for a causal link between any WCHS defendant and the violation of this purported federal right. The same is true of plaintiff's claim that WCHS as a whole refused to follow a court order to provide stipulated information as it fails to allege a causal link between any of the remaining individual WCHS defendants in their personal capacities and this refusal to comply. (See Compl. (DE 5) 9, 13, 20).

In sum, plaintiff's allegations relating to his § 1983 claims against the WCHS defendants, whether based on alleged constitutional or federal statutory violations, fail to raise his right to relief above a speculative level.[6] Considering only plaintiff's "well-pleaded facts," they "do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

---

[6] Accordingly, the court does not address the WCHS defendants' Rule 12(b)(5) motion, finding dismissal appropriate instead under Rule 12(b)(6).

18

Case 5:19-cv-00162-FL   Document 51   Filed 12/17/20   Page 18 of 20

b. Clearly Established Law

As stated above, "[q]ualified immunity protects officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537-38 (4th Cir. 2017) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) (per curiam) (quotation omitted). Further, "a right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" Carroll v. Carman, 574 U.S. 13, 16 (2014) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The contours of a right are sufficiently clear only where "existing precedent . . . [has] placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Plaintiff's claims against the WCHS defendants also fail under a qualified immunity analysis, even at this early stage of the proceedings. Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) ("Qualified immunity may be raised in a motion to dismiss."). Even presuming that plaintiff adequately alleged valid constitutional violations, which, as analyzed above, he does not, the court cannot say that the contours of the rights allegedly violated were so sufficiently clear that a reasonable official would understand that what he or she was doing violated plaintiff's asserted due process, Fourth Amendment, or First Amendment rights. Accordingly, plaintiff's claims against the WCHS defendants are subject to dismissal under Rule 12(b)(6) based on qualified immunity as well as the reasons stated above.

C.  Motion to Show Cause

Plaintiff has provided no basis for the court to hold counsel Jennifer Jones or counsel Colleen Crowley in what would presumably be civil contempt. See In re Gen. Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995) ("Civil contempt is an appropriate sanction if [the court] can point to an order of this [c]ourt which 'set[s] forth in specific detail an unequivocal command' which a party has violated." (third alteration in original) (quoting Ferrell v. Pierce, 785 F.2d 1372, 1378 (7th Cir. 1986))). Plaintiff additionally, and without more detail, requests that defendants' counsel both be referred to the "North Carolina State Bar Association"[7] based on alleged perjury and failed to investigate the facts underlying the defendants' motions. The court finds no merit in plaintiff's request that defendants' counsel be referred to disciplinary authority.

Finding no basis or merit in plaintiff's motion to show cause, the court denies it in whole.

## CONCLUSION

Based on the foregoing, the defendant Cohen's motion to dismiss (DE 38) is GRANTED. Plaintiff's § 1983 claim against defendant Cohen is DISMISSED WITHOUT PREJUDICE. Further defendants Fields, Griffin, Jones, and Pearson's motion to dismiss (DE 35) is GRANTED. Plaintiff's § 1983 claims against them are DISMISSED WITHOUT PREJUDICE. Plaintiff's motion to show cause (DE 46) and motion to recuse (DE 47) are DENIED. The clerk of court is DIRECTED to close the case.

SO ORDERED, this the 17th day of December, 2020.

                                                    LOUISE W. FLANAGAN
                                                  United States District Judge

---

[7] Presumably, plaintiff means the North Carolina State Bar, the government agency responsible for the regulation of the legal profession in North Carolina, rather than the North Carolina Bar Association, a voluntary membership organization of lawyers, judges, paralegals, and law students.